IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAROLYN APPLIN

      Plaintiff,                              No. CIV S-04-1572 CMK

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                         <u>ORDER</u>

_____/

        Plaintiff, Carolyn Applin, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act. The parties have filed cross motions for summary judgment. As both parties have consented to magistrate jurisdiction, the motions are before the undersigned for decision. For the reasons reflected below, plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

///

///

///

## I. BACKGROUND

Plaintiff filed an application for DIB on June, 26, 1997, alleging an inability to work due to orthopedic and psychiatric impairments. (Tr. 127-29.)  Plaintiff later, through counsel, amended her disability onset date to February 25, 1999.  (Tr. 33, 768.)  Plaintiff's application was denied initially and upon reconsideration. (Tr. 59-62, 64-67.)  A hearing was held before an administrative law judge ( ALJ) on March 16, 1999.  (Tr. 853-898.)  In a decision dated April 14, 1999, the ALJ found that plaintiff was not disabled because she regained the ability to perform a reduced range of light work, including her past work as a customer service manager and telemarketer.  (Tr. 83-90.)  Plaintiff requested that the Appeals Council review this decision.  (Tr. 98.)  The Appeals Council issued a decision vacating the ALJ's decision and remanding the matter back to him for a new hearing to properly evaluate plaintiff's subjective complaints and to develop the record regarding plaintiff's orthopedic impairments.  (Tr. 106-09.)

A remand hearing was held before the ALJ on September 25, 2002.  (Tr. 782-852.)  In a written decision dated June 27, 2003, the ALJ again found that plaintiff is not disabled because she retained the residual functional capacity (RFC) to engage in light work, including her past work as a customer service manager and telemarketer.  (Tr. 32-54.)  Plaintiff requested review of the decision by the Appeals Council and submitted additional medical records in support of her claim.  (Tr. 769-781.)  The Appeals Council declined to review plaintiff's claim on June 5, 2004, making the last decision of the ALJ final.  (Tr. 9-12.)  Plaintiff filed a timely appeal in this court on August 5, 2004.

Plaintiff testified that she was fifty years old at the onset of her disability in 1999. (Tr. 127.)  She last worked in customer service in a bank, dealing with customers by telephone. (Tr. 857-58.)  She stopped working in 1995, after a fall at work.  (Tr. 790.)  She states that discs in her back were "totally exacerbated" by the fall, and she was unable to return to work.  (Tr. 790.)  Plaintiff related that she had back pain and was unable to stand for long periods of time. She stated that she had been in regular physical therapy programs, submitted to "four or five"

epidural injections, tried acupuncture, attended pain management classes and took pain medication, but that none of these things had made an appreciable difference.  Claimant testified that she had also had problems with her left knee as the result of an accident.  (Tr. 795.)  She stated that her knee pain had gotten better after surgery but worsened after her right knee began to hurt.  (Tr. 797.)

Plaintiff has an extensive medical history of treatment for lower back pain, knee pain and, most recently, breast cancer.  The relevant medical history is summarized in the extensive administrative record, which was certified on September 8, 2004.  As the parties are familiar with the plaintiff's extensive medical history, the undersigned will not summarize it again here.

**II.  STANDARD OF REVIEW**

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole.  See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-

30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. She first asserts that the ALJ improperly rejected the evidence and opinions from her primary treating physicians. Second, plaintiff alleges that the ALJ improperly rejected the opinion of the medical expert who testified at the hearing.

The ALJ considered, but rejected, the evidence and opinions from plaintiff's two primary treating physicians, Sandra Edwards, M.D. and Alexander Reynoso, M.D., and from plaintiff's treating therapist, Doris Jones, a licensed clinical social worker (LCSW), all three of which consisted of medical source forms reflecting the opinion that plaintiff had significant limitations in her ability to function both mentally and physically. The ALJ found that the forms had no evidentiary value and that "similar fault"[1] under sections 205 and 1631 of the Social Security Act was involved in the providing of this evidence.

"The opinion of a treating physican is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject the uncontradicted opinion of a treating physician only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). When conflicting medical evidence is presented, however, the ALJ must resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Although the treating physician's opinion is given deference, the ALJ may reject the opinion of the treating physican in favor of a contradicting opinion of an examining physician, providing the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. See

---

[1] Similar fault is involved if "an incorrect or incomplete statement that is material to the determination is knowingly made or information that is material to the determination is knowingly concealed." Social Security Ruling 00-2p.

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ may satisfy this requirement by setting out a summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

   Here, the ALJ noted that a review of Dr. Reynoso's medical source statement establishes that a "significant portion" of the form was completed by plaintiff "in pencil and in her readily identifiable handwriting....and copied over by Dr. Reynoso in pen." (Tr. 37, 755-762.)  For example, the portions of the form completed by plaintiff pertain primarily to her exertional and non-exertional limitations and also to the severity of plaintiff's symptoms.  (Tr. 37.)  The ALJ cited that Dr. Reynoso's "original, undisturbed narrative" was vague and imprecise in its support of plaintiff's exertional limitations.  (Tr. 38.)  Dr. Reynoso noted that plaintiff had "chronic lumbar pain symptom, chronic mechanical pain syndrome and an MRI describing minimal disc degeneration."  (Tr. 38, 755.)  The ALJ also noted that plaintiff stated that she hand-carried the form to the doctor and talked with him about the form.  She stated that the doctor told plaintiff to fill it out and that he would change anything with which he did not agree.  (Tr. 38, 813-827.)

   In his discussion of Dr. Edwards's medical source statement, the ALJ noted that it was "replete with indications on the face of the form itself that it was completed by two individuals." (Tr. 38, 747-754.)  The ALJ specifically noted that items "9, 10 and 12, estimates of pain and the duration claimant can sit were circled, whited out, and changed to reflect greater limitations." (Tr. 38.)  The adjustment to item twelve changed the duration that plaintiff could sit from three hours to two hours, which the ALJ pointed out is highly relevant to plaintiff's ability to work. (Tr. 38, 749.)  The ALJ considered that plaintiff testified that, after Dr. Edwards sent her the form, which they had completed together, plaintiff called Dr. Edwards to discuss Dr. Edwards's assessments on page three. (Tr. 39, 749.)  After this exchange, Dr. Edwards changed plaintiff's degree of limitation from minimal to moderate.  (Tr. 39, 751.)  The ALJ stated that he accepted the narrative portions of Dr. Edwards's medical source form as probative, but he stated

1   that the narrative portions of the report did not support the extreme functional limitations set

2   forth in other parts of the medical source form. (Tr. 38.) For instance, Dr. Edwards described

3   plaintiff as being stable and stationary with mild pain. (Tr. 38, 747.) Then Dr. Edwards

4   inconsistently described plaintiff's pain as "constant." (Tr. 38, 748.) The ALJ stated that he had

5   completely disregarded the narrative at "no.28, concerning the need to lie down because it is

6   clearly copied over an erased pencil narrative provided by plaintiff." (Tr. 38.)

7             The ALJ stated that he rejected the medical source statement from the social

8   worker, Ms. Jones, because plaintiff had filled out the form herself. (Tr. 39.) The ALJ noted

9   that a notation in Ms. Jones's handwriting at the top of the form clearly stated that "client filled

10  out." (Tr. 39, 484, 486-88.) It is clear from the form itself that Ms. Jones initialed beside the

11  narrative portions which she filled out, which include plaintiff's diagnosis and her "multiaxial

12  evaluation." (Tr. 483.) The ALJ noted that plaintiff testified that she filled out the form herself

13  and that Ms. Jones informed plaintiff that she could not fill out the form. (Tr. 39.)

14            To further justify his rejection of the medical source statements, the ALJ

15  explained that he believed that "similar fault" existed in this case through the individual and joint

16  actions of plaintiff and Dr. Reynoso as well as between plaintiff and Dr. Edwards. (Tr. 40.)

17  "Similar Fault" occurs when an incorrect statement that is material to the case is knowingly

18  made. (Tr. 40.) The ALJ found that both the doctors knew that the medical source statements

19  were incorrect and incomplete. (Tr. 40.) The ALJ concluded that the statements were not those

20  of either doctor but, instead, were "cobbled together assessments of the doctors' opinions, the

21  claimant's opinion and the doctors' opinions as influenced by claimant." (Tr. 40.)

22            The ALJ put forth numerous specific and legitimate reasons for rejecting the

23  medical source opinions of plaintiff's treating physicians and treating therapist. See Magallanes,

24  881 F.2d at 751. The ALJ set out a thorough summary of the facts and noted the conflicts in the

25  clinical evidence. For example, the ALJ noted that Dr. Edwards's assessment of plaintiff in the

26  questionnaire was inconsistent in that on one page the doctor described plaintiff as "stable" with

"mild pain" yet, on the next page, the doctor described plaintiff's pain as "constant." (Tr.38.) Further, it is apparent from the record that the ALJ considered the medical source opinions in concert with the other medical records and with plaintiff's own written and oral statements in order to make a final determination of plaintiff's limitations. (Tr. 41.) Accordingly, the undersigned finds that the ALJ's decision was based on substantial evidence in the record and finds no error in the ALJ's decision to discount the medical source statements from plaintiff's two physicians and from her treating therapist.

Plaintiff next contends that the ALJ erred in rejecting the medical expert's (ME) opinion. The report of a non-examining, non-treating physician "should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984.) The ALJ gave the following reasons for discounting the ME's opinion:

> First, the report on which the expert relies almost exclusively does not support his opinion testimony. Second, the ME failed generally to support his opinion with medical evidence of the record that satisfies the legal standard for establishing equivalency to a listing. Third, the expert misconstrued the terms of the listing in question to such an extent that his own testimony establishes that the listing is neither met nor equaled.

(Tr. 45.) In his decision, the ALJ cited the fact that the ME failed to cite anything other than claimant's subjective complaints to support his determination that she has the type of ambulation difficulty contemplated in Listing 1.04C.[2] (Tr. 45.) The ALJ noted that, although the ME concluded that plaintiff had significant trouble ambulating, he was only able to point to "support throughout the entire record" to bolster his conclusion but could not point to any specific support in the record. (Tr. 46, 47.) Further, the ALJ found that the ME's testimony is based on a misreading of the Listing. The ALJ also noted that plaintiff's testified level of activity more than

---

[2]Listing 1.04C provides "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

satisfies the Listing's requirement for being able to ambulate in contradiction to the ME's determination that plaintiff has ambulation problems. (Tr. 47.)   Taken together, these reasons are sufficient to support the ALJ's decision to disregard the ME's opinion that plaintiff met or equaled Listing 1.04C.

**IV.    CONCLUSION**

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied,

2. The Commissioner's cross motion for summary judgment is granted and;

3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:   September 30, 2005.

                                                                   _____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE